is Hundley versus Aranas and yes counsel for the appellant whenever you're ready thank you good morning your honors my name is Maggie McCledgey and I'm counsel for plaintiff Ms. Jamie Deirdre Hundley. Ms. Hundley has been diagnosed with gender dysphoria she was diagnosed over a decade ago and she has struggled for over a decade to obtain medically necessary care from the Nevada Department of Corrections. While this case bears some obvious similarities to the last case on this court's docket, procedurally where we are is very different and that's that the district court in a screening order dismissed all of Ms. Hundley's claims with prejudice disallowing her the right to amend even on claims that were newly added in Ms. Hundley's first amended complaint. While none of Ms. Hundley's claims should have been dismissed the most important question in my view before the court is whether it's possible for Ms. Hundley to cure deficiencies in her complaint by amendment whether the district court properly found so. The answer to that question those questions is absolutely not and in holding otherwise the district court have turned applicable standards on their heads. The defendants who have appeared in this action also do likewise in their answering briefs. The Prison Litigation Reform Act has a narrow purpose and that purpose is not holding prisoners to an impossible standard and as the district court and the defendants would have this court do. Instead it is saving prison officials from having to respond to frivolous and abusive lawsuits by prisoners. Under the Prison Litigation Reform Act when determining whether a complaint states a claim the district court is supposed to is supposed to construe the facts and like most favorable to the plaintiff not the other way around. Yet for example defendants would have you would have you believe that Ms. Hundley has made admissions in her first amended complaint and would have you believe that have you assumed that defendants exercised provided constitutional care. The district court and defendants also failed to be forgiving because plaintiff was pro se when she filed her first amended complaint. The district court and defendants also failed to consider facts and other causes of action. When you look at Ms. Hundley's claims in fact the first, second, first, second, third, fourth, and fifth claims are all interrelated and all provide details about the constitutionally inadequate care that Ms. Hundley alleges the Nevada Department of Corrections officials provided. Further the district court and defendants failed to consider exhibits. In its second screening order and on this case it screening order that allowed some claims to proceed and at least allowed Ms. Hundley the ability to amend. In its second screening order the district court makes much adieu of the fact that Ms. Hundley did not refer to the standards of care but those standards of care were attached to the complaint because they were attached to grievances she attached to the complaint. Under federal rules 10c those those those that those that information should have been considered integrated into the complaint by the district court. Finally in its drastic about phase in the order it rescinded the district court never even addressed why it was impossible for Ms. Hundley to amend. A lot of time has passed the district court sat on Ms. Hundley's complaint for about a year and a half before issuing I think its first screening order. A lot of times has passed. Ms. Hundley now has counsel and she should certainly be permitted to amend her complaint and this case should be allowed to proceed forward. With regard to the deliberate indifference claims which are the most important claims at hand obviously and therefore what I'm going to focus on it's beyond dispute in my view that Ms. Hundley has alleged a serious medical need. The by definition by definition gender dysphoria means that a person who's diagnosed under the DSM-5 person who has been diagnosed with gender incongruence between their assigned gender at birth and the experienced gender they suffer distress from it. The Nevada Department of Corrections as part of resolution of prior litigation has apparently already recognized Ms. Hundley suffers from gender dysphoria and that it's a serious medical need meriting treatment. Can I counsel can I interrupt you just ask for a clarification of this claim. Is your client asking to is she saying that I am just entitled to an individual assessment as to whether I should get the surgery? Ms. Hundley believes she should have a surgery but what she's asking for in her complaint is that she be assessed for the surgery. As what Ms. Hundley alleges and pretty clearly so is that the Nevada Department of Corrections had a blanket policy and she's allegations regarding communications I think with defendant Oranis who says she won't even be SRS because the Nevada Department of Corrections has never done so and because of a policy at the Nevada Department of Corrections. So there's there's two two components to her deliberate indifference claim. One is one is the most two important components. One is the SRS and the other is the hormones. With regard to the hormones her claim is that she she got diagnosed by a specialist she got prescribed hormones by a specialist and her claims in when you look at the allegations in all of the causes of action because while she captions her fourth cause of action for example as a first amendment retaliation claim it includes detailed allegations regarding improper cuts to her hormones and improper treatment with regard to her hormones. So taken all together with regard to her hormones while defendants would have you believe that they're just properly assessing side effects when you look at the allegations what Ms. Hundley alleges is that they cut and or decrease the hormones at various times because of her reasons unconnected with medical care and while defendants seem to think that some medical care means constitutionally adequate care that is not the case. This court has held that where where prison officials fail to follow a specialist order for example that care could be constitutionally inadequate. Ms. Hundley has alleged facts that that reasonably can from which reasonably inferred can be hostility towards Ms. Hundley and that that is guiding care rather than actual medical determinations. Further it's important to point out and I think the answering briefing in this case suggests otherwise. It's not clear that Ms. Hundley has been diagnosed with actual side effects. In fact what she alleges is that defendants at various times have said well I'm concerned that there might be side effects but as we point to the WPATH standards of care provide two important things on this point. First that if if if some of the side effects don't come to pass in two years and Ms. Hundley has been taking hormones for more than two years that those concerns should be should not be very serious yet that's a basis on which defendants have denied her hormones that they directly violated applicable standard of care. Second while while defendants make much ado of the fact well we can reduce these hormones because they could have side effects those hormones that are given for gender dysphoria always contain the possibility of side effects and to provide constitutionally adequate care what providers are supposed to do is compare the health benefits this is in is in the WPATH standards of care in the appendix. What providers are supposed to do is do a risk-benefit analysis where they compare they compare the benefits to the potential risks and again because Ms. Hundley had had taken hormones for a significant period of time without side effects it's hard to understand a legitimate basis on which Ms. Hundley was the hormones were changed reduced at some point ultimately denied. I'll briefly just I'll briefly just talk counsel counsel before you move on I have a question for you on the question of whether the state the prison had a blanket policy that they would not do the SRS will not do sexual reassignment surgery but wanted to treat with best case your best federal case in the Ninth Circuit that says that a a prison cannot have a blanket policy like that and that if there's the threat to some severe medical condition they have to do an individual individualized analysis so certainly the Edmo case stands for the proposition where there is where there is serious whether it's a serious need for SRS prisons are constitutionally required to provide it. Other cases not specifically dealing with SRS such as Caldwell v. Bannister 763 F3D 1060 address blanket and categorical denials of medical medically indicated surgery so this perhaps not necessarily only in in the transgender treatment transgender dysphoria treatment context but in other cases this court has specifically held that a categorical denial of care is not appropriate and is not constitutional here the prison the prison certainly it is not constitutional to say you don't get to be considered for SRS despite the fact that we've had issues with your hormones were concerned about the claims they've had concerns about the hormonal treatment is a reason to consider SRS if they're concerned about potential side effects and if they legitimately and truly believe that Ms. Hunley may not be an appropriate candidate for continuing on SRS at least on the at least at the level that brings the benefits that are expected and hoped for under the standards of care then SRS should certainly be considered and just saying a prison can't can't basically opt out of the constitutional 8th Amendment requirement by saying hey you know what we've just decided that we don't provide that kind of care they can't do that and that's exactly what they Nevada has done they've claimed that their failure to provide it to anybody else and that their blanket policy is a reason she can't even talk to anybody about the potential potential need for SRS counsel I have another question if I'm using up too much of time I'll ask just Watford to please give you some extra time my questions this on there was a claim that she was denied female undergarments and that that previously I thought it was previously approved and so my question is we're in the record could you sign in the record to where it shows that the prison had approved female undergarments for her I don't have exact page page your honor but she was she was previously she does allege that Cheryl Foster I believe a warden at one of the facilities previously allowed her further the Nevada Department of Corrections actually a result of prior litigation that I was involved with with the Department of Corrections agreed to policy that previously I always refused to allow any any female undergarments or other grooming items to transgender prisoners and they did change that policy and what is what miss Hundley alleges is that she was receiving them I believe they get their undergarments every six months and for at for one of the six months provisions a an end-off official denied it based on his own very discriminatory comments and I want to be clear about something in terms of equal protection the defendants claim that there was no protection violation because she's being treated like all the other prisoners in a male prison that argument is like saying a gay marriage ban does not discriminate against gay people because they everybody can marry people of the of the opposite sex so here the point is is that cisgender people are able to obtain appropriate undergarments and for a six-month period defendants make much ado of the fact that this was just once but this was a six-month period further and counsel just for clarity the citation in the first amendment amended complaint begins at er 65 where this is set out I'd like to save a little bit of time for rebuttal unless judge would you have further questions on the equal protection at least as I'm understanding your argument it's that a transgender woman is denied the garments whereas a cisgender woman would be given them and this is gender male prisoners get get undergarments that are appropriate for their gender miss Hundley did not get for a six-month period based on her what I'm going to do is ask judge Watford he could please add an extra minute for repellents rebuttal time to make up for all the questioning I did of course I'll certainly do that all right thank you okay very good let's hear from counsel Jeffrey Connor from the Nevada Attorney General's office I think I want to where I would like to start today is that I think there's actually a very practical way to resolve this and that and that's that having looked at this case very closely I don't have much disagreement with opposing counsel that a remand here to allow miss Hundley to file an amended complaint is probably the appropriate remedy here I don't necessarily agree that all of all of her claims state valid claims for relief though I do think that at least maybe not with the the inclusion of claim for that the rest of the claims are something that probably could be saved by amendment and with miss McClatchy's in the case now assisting miss Hundley in preparing an amended complaint I think that you know this court maybe has two options here which would be to remand with instructions to either allow miss Hundley to file a motion for leave to file a second amended complaint that prepares a proposed amended complaint for the for the district court to review or the alternative would you know if the court thinks that that such a motion is unnecessary that this case could be sent with an opportunity for miss Hundley to file an amended complaint with the assistance of counsel I am prepared to discuss each of the claims in the in the complaint if the court is willing to do so or what is would like that but I think this this really could be as simple as the court issuing an order that simply says we don't need to decide which claims do and and don't state a claim for relief that that we do we have looked at this and think that at least some of the and that it would be appropriate to give counsel an opportunity to file an amended complaint here to assist miss Hundley in raising her claims well can I jump in I appreciate that suggestion that what you described is certainly my view as to most of the claims now you carved out I think claim four and I do I don't know the claim numbers and what which claim is that it's the undergarments claim okay so you know claim claim for is the First Amendment retaliation I'm sorry my apologies okay you're right okay but so and anyway it seems to me what you've proposed is perfectly reasonable and it's kind of where I was leaning but I did have one question I think about the eighth amendment claim relating to the request for surgery it seemed to me that we could do more than just say as to that claim that leave to amend should be that's the allegation I don't know if that's the reality on the ground and I thought we had pretty clearly held already in a number of cases the cases that your opponent mentioned as well as Rosati that that kind of blanket ban is absolutely not permitted and so at the very least Miss Hundley would be entitled to be evaluated to see whether surgery is is necessary so maybe that that's the only claim I thought for sure could go forward and you sound like maybe you disagree even with that all right well I I think this this case is pretty pretty close to Rosati I'm not willing to concede that it's it's directly and on point with with Rosati because I think the circumstances of that case are a little bit different with respect to whether or not a blanket policy violates Constitution or not you know that there still has to be a some sort of harm I do recognize that part of the analysis and Rosati was a recognition that the absence of an opportunity for an appropriate evaluation deprives Miss Rosati of being able to appropriately raise that claim but I think that the factual circumstances of why the the inmate in that case was saying that sexual reassignment surgery was was rose to the level of an Eighth Amendment violation is different than than the factual circumstances of this case and so I'm not certain that there isn't a factual distinct distinction but here between here and this case and Rosati excuse me Rosati that that the facts here might not rise to the level of an Eighth Amendment violation. I don't have any questions okay Judge Gould do you have further questions for counsel of this for the state well I guess if I could ask sort of a global question here just counsel would if counsel correct me if I'm wrong but why shouldn't we reverse in part as to the blanket ban and as to the denial of equal protection and vacant remand in part as the as to the failure to permit amendment of the complaint with instructions to permit an amended complaint. Affirm in part to the extent there was a claim against the defendants and there were damages in their official capacity. So I think your honor just first with the with the respect to the to the blanket policy you know I think that comes back to my prior answer here which is that I think there there may be some factual differences here where there hasn't been a sufficient showing of harm resulting from the blanket policy and and so I think that this may be a distinction here between this case and those other cases where there's not enough there to show that the blanket policy is actually harming Ms. Hundley but on claim claim three which is the undergarment claim you know I'm pretty hard-pressed to see why that that doesn't at least state a claim that's sufficient to survive screening you know what will come of that claim beyond that point I don't know but I think there's probably enough there for that to claim that claim to have survived screening. And on the amendment you agree they should be able to file an amended complaint as to claims that were not ruled upon. Correct I mean I think that they should be allowed to file an amended complaint there may be issues with with a statute of limitations or you know relation back those sorts of things that they try to raise claims beyond what was raised in the original complaint. I'm not certainly not waiving any defenses on the part of the defendants who here haven't even been served with the complaint yet but do recognize that I think you know Ms. McClatchy is an excellent attorney and I and I think she'll do a great job of working with her clients to identify the claims that she thinks are that give her client the best chance of success and then you know the case will go from there. And then counsel would you agree we could affirm in part as to the claim for damages against officials in their official capacity? I think that's correct your honor yes. Okay thank you I have no further questions. Okay very good thank you very much there's time for rebuttal I don't know if you'll need that extra minute but you certainly have it if you do. Thank you very much your honor. So with regard to the defendants arguments with regard to the severity I understand that there may not be the same kind of detail as was in the Rosati case which I should have mentioned in response to Judge Gould's question earlier about the best case on point but excuse me but with regard to the severity Ms. Hundley has already been diagnosed not just with and the WCAP standards which are at 129 of the excerpt of records says that sex reassignment is affected and medically indicated in severe GID. I understand that it's not necessary or appropriate in every single case even with severe GID but it should be considered so I don't think I don't think we need to go back through screening certainly on whether her claims are severe. I am pleased by the defendant's suggestion that we be that now that Ms. Hundley has counseled that we be able to amend the complaint. I would I believe what's important though is not just remanding so that the district court again screens a further amended complaint and this case sits there again for another potentially year and almost a half but rather this case should get out of screening we and I believe that I believe that the claims are sufficiently good enough in my view for a pro-safe plaintiff to pass screening. She now Ms. Hundley again now has counsel and I'll be happy to file an amendment. Okay very good. Thank you both for your arguments. The case just argued is submitted. Thank you. Thank you. We'll turn to the last case.
judges: GRABER, GOULD, WATFORD